UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JARMORI BROWN,<br><br>　　　　　　　　　Defendant. | Criminal No. 22-cr-10157-FDS |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Jarmori Brown personally traveled from Boston to Alabama on a commercial bus, obtained firearms there, and transported the firearms hidden in his luggage on the commercial bus back to Boston.  He did so in furtherance of a conspiracy with at least three co-conspirators, in which over the course of a year the co-conspirators brought approximately two dozen firearms from Alabama into Boston for distribution to individuals who could not lawfully possess firearms and who, in several cases, used those firearms in shootings.  For his actions, the government respectfully requests that this Court impose a 27-month sentence of imprisonment – at the low end of the Guidelines Sentencing Range (GSR) as calculated by the parties – as well as supervised release for three years thereafter.

## FACTS

The government relies on and incorporates the facts as set forth in the statement of offense conduct in paragraphs 10 through 23 of the Presentence Investigation Report ("PSR"). In summary, at some point between January 2, 2020 and May 27, 2021,[1] the defendant Jarmori

---

[1] As noted in the government's objections to the PSR, although the conspiracy began no later

Brown, also known as "Live," willfully entered into an agreement with Jahquel Pringle, Kobe Smith, and Brandon Moore, as well as others, to obtain no fewer than twenty-four firearms from Alabama, where Moore lived, and transport them to Massachusetts, where Pringle, Brown, and Smith lived, for their use and for distribution to their associates. Neither Brown, nor Moore, Pringle, or Smith, was a licensed importer, manufacturer, dealer, or collector of firearms. Moreover, Moore and Pringle were felons who were not permitted to possess firearms, and none of the defendants had a Massachusetts firearm identification card permitting them to possess firearms in Massachusetts. PSR ¶¶ 11-13.

**Overview of Conspiracy**

As part of the conspiracy, Pringle and Smith placed orders for firearms with Moore, after which Moore purchased or otherwise obtained firearms in Alabama.   Pringle and Smith arranged for the transport of the firearms from Alabama into Boston.   Pringle and Brown physically transported the firearms from Alabama to Boston hidden in their luggage on commercial buses. Pringle made one trip to transport the guns in July 2020, and Pringle and Brown made a second trip to transport additional guns in August 2020.   PSR ¶¶ 14-15. Altogether, the co-conspirators brought at least 24 firearms obtained in Alabama to Massachusetts.   PSR ¶ 17. The co-conspirators distributed the firearms to individuals that they knew intended to use them unlawfully. PSR ¶18.

---

than January 2, 2020, the government does not have evidence that Brown joined the conspiracy prior to his 18th birthday in June 2020; accordingly, the government does not have evidence that Brown joined the conspiracy while under a criminal justice sentence.

**Brown's Substantive Crime and Acts in Furtherance of Conspiracy**

      After Pringle brought one batch of guns from Alabama to Boston in mid-July, Moore communicated with Smith and Pringle in late July and early August 2020 about additional firearms that he had available or could procure for them. On or around July 30, 2020, Moore caused an individual to purchase three firearms for him at a gun store in Alabama. On or around August 6, 2020, Pringle purchased commercial bus tickets for him and Brown to travel from Boston, Massachusetts to Montgomery, Alabama on or around August 10, 2020.   Pringle and Brown used those tickets and made that trip as scheduled.   On or around August 17, 2020, Brown and Pringle boarded a commercial bus in Montgomery, Alabama, in possession of approximately 12 to 15 firearms that Moore had obtained for them in Alabama.   Brown and Pringle traveled to Boston, Massachusetts, with the firearms hidden in their luggage, arriving in Boston on or around August 19.   This is verified by historical cell site location records, which show Brown's phone traveling from Boston to Alabama between August 10 and 12, 2020, and traveling back from Alabama to Boston between August 17 and 19, 2020.   PSR ¶16.

      The co-conspirators kept some of the firearms obtained in Alabama for themselves and distributed other firearms to their associates in and around Boston.   At least seven of the firearms purchased by Moore's straw purchaser in Alabama in 2020 and provided by Moore to Pringle and/or Brown have been recovered in and around Boston and have been confirmed to meet the definition of firearms under federal law; three additional firearms linked to the conspiracy have also been recovered.   One of the firearms that had been purchased by Moore's straw purchaser in Alabama on July 14, 2020 was recovered in Boston at the scene of a shooting on July 17, 2020, just three days later, and the same day that Pringle had arrived in Boston with it following his trip to Alabama. All three of the firearms that were purchased by Moore's straw

purchaser in Alabama on July 30, 2020, and transported to Boston by Pringle and Brown in August 2020, have been recovered in Boston – one on November 13, 2020 in the possession of a then-juvenile suspected of being involved in a shots-fired incident that day and two on December 17, 2020 in the possession of individuals observed fleeing the area of a ShotSpotter activation. PSR ¶¶ 17-21.

On December 13, 2020, Brown was arrested by Boston Police for possession of a loaded Smith & Wesson Model M&P 40, .40 caliber firearm, which had been purchased by Moore's straw purchaser on July 14, 2020 in Alabama and transported to Boston by Pringle.   Police had responded to a call for a male matching Brown's description in possession of a gun and located Brown at the specified location; the firearm was found in the back yard of the residence. Brown was later identified by a witness as the individual who had had the gun in his hand.   PSR ¶ 22.

## DISCUSSION

### I. Sentencing Guideline Calculation

Probation has calculated defendant's total offense level as 17; the government agrees with this calculation.   Probation has calculated the defendant's criminal history category as III, which the government disputes (as discussed further below).   Based on its calculations of a total offense level of 17 and criminal history category III, Probation has calculated a guideline sentencing range ("GSR") in this case to include a term of incarceration from 33 to 37 months, to be followed by a term of supervised release of one to three years; a fine of $10,000 to $95,000; and a special assessment of $200.

The government disputes Probation's calculation of the defendant's criminal history level and consequently also its calculation of his GSR.   As the government notes in its Objections to the PSR, because the government does not have evidence that Brown personally joined the

conspiracy until after his 18th birthday in June 2020, the government could not prove that the defendant committed the instant offense while under a criminal justice sentence.  Accordingly, the defendant is properly assigned only two criminal history points for the offense listed in ¶ 41 of the PSR and is properly assigned criminal history category II.   Therefore the government urges the Court to find that, with a TOL 17 and CHC II, Brown's GSR is properly calculated as 27-33 months.

## II. Plea Agreement

The parties entered into a plea agreement on March 17, 2023, in which the Defendant agreed to plead guilty to Counts One and Three of the indictment, and the government agreed to recommend a sentence of 27 months of incarceration for the defendant to be followed by a term of three years of supervised release, as well as the $200 special assessment.

## III. Application of the Section 3553(a) Factors

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2).   These factors include the nature and circumstances of the offenses and the history and characteristics of the defendant, and the need for the sentence imposed to satisfy the statutory purposes of sentencing. They also require courts to consider the kinds of sentences available, the applicable guidelines, pertinent Sentencing Commission policy statements, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. In this case, these factors point to a sentence of imprisonment of 27 months and three years of supervised release.

A. **<u>Nature and Circumstances of the Offense; Need for Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment and Deterrence, and Protect the Public</u>**

The nature of the offense is quite serious. Brown has pleaded guilty to one count of Conspiracy to Commit Illegal Transportation or Receipt in State of Residency of Firearm Purchased or Acquired Outside of State of Residency in violation of 18 U.S.C. § 371, and one count of Illegal Transportation or Receipt in State of Residency of Firearm Purchased or Acquired Outside of State of Residency and Aiding and Abetting the same, in violation of 18 U.S.C. §§ 922(a)(3) and (2).

Brown has admitted to participating in a conspiracy that obtained no fewer than twenty-four firearms from Alabama and transported them to Massachusetts. Because of the conduct by the defendant and his co-conspirators, dozens of firearms have been illegally distributed on the streets of Boston and surrounding communities. At least 10 of the firearms that were illegally brought from Alabama to Boston have been recovered in and around Boston, in the hands of individuals who were not permitted to have firearms. PSR ¶ 23. In one instance, one of the firearms the defendant and his co-conspirators distributed illegally was used in a shooting within 3 days of its purchase in Alabama and within 24 hours of Pringle's return to Massachusetts; three other firearms purchased in Alabama were later found in the possession of individuals suspected of involvement in shootings or shots-fired incidents. PSR ¶ 23(b), ¶21.

The scourge of gun violence in Boston is well-documented. Between January 1 and December 31, 2020 (the year in which Brown bought guns in Alabama and brought them back to Boston), Boston recorded 44 fatal shootings and 230 non-fatal shootings. *See* https://static1.squarespace.com/static/5086f19ce4b0ad16ff15598d/t/61d7308e3e9b031b58d8bc5c/1641492622410/Pages+from+Weekly+Crime+Overview_+2021+Year+End-2.pdf (last

accessed July 5, 2023). Any sentence in a case such as this must take into account the harms that the proliferation of illegal firearms and their delivery to individuals not permitted to possess them causes to the community, and the danger that the unrecovered firearms from this particular crime pose to the community right now.

A sentence of incarceration at the low end of the Guidelines is the lowest sentence necessary in this case to reflect the seriousness of these offenses, to promote respect for the law, to adequately punish the defendant for his criminal conduct, to deter him and others from offending in the same way again, and to protect the public.

### B. The History and Characteristics of the Defendant

The government acknowledges certain points that are reflected in the PSR, including that the defendant had a difficult, unstable childhood and has had substance abuse issues. The government acknowledges that the defendant was barely 18 at the time that he began this offense and that his co-conspirators were all older, and in some cases much older, than him. It also does not dispute that he has in this case promptly taken responsibility for his conduct. And, because of his age, the defendant has limited adult criminal history and has never served an adult prison sentence. The government acknowledges that the defendant has made some positive choices during his pre-trial detention, including participating in educational programming and GED preparation. PSR ¶ 68. The government has considered these factors in recommending a low-end guideline sentence.

However, the government must also consider the defendant's prior record (PSR ¶ 41), his personal possession of one of the illegally-obtained firearms here (PSR ¶ 22), and his role in funneling the firearms into the hands of individuals who could not legally possess them and, at least in a couple of known occasions, engaged in violent crime with them. The whereabouts of

more than half of these firearms are still unknown.   The government also notes that this is not a case where the defendant has demonstrated a complete turnaround in thinking and willingness to abide by rules since committing the offense; records at the House of Corrections where he has been detained indicate that he has received discipline reports for conduct such as disobeying direct orders, interfering with staff, disruptive behavior, and assault, all since January 2023.  PSR ¶ 7.   While participating in a substance abuse group (PSR ¶ 66), he has declined to participate in mental health treatment that could help him process the losses and trauma he has experienced and his associated anger.   PSR ¶ 63.

In light of all of these factors, a sentence of 27 months imprisonment, with three years of supervised release, is sufficient, but not greater than necessary, to accomplish the goals of sentencing set forth in § 3553(a).

### C. Avoiding Unwarranted Sentencing Disparities

The government's recommended sentence is in line with national sentences for similar crimes by defendants with similar criminal history.   JSIN data submitted by Probation demonstrates that over the last five fiscal years, there were 1478 defendants whose primary guidelines was § 2K2.1 with a final offense level of 17 and criminal history category III, after excluding defendants who received a §5K1.1 substantial assistance departure; for the 1433 defendants who received a sentence of imprisonment, the average length of imprisonment imposed was 29 months and the median was 30 months.   PSR at ¶¶ 93-95.

The government re-ran the JSIN data to reflect its calculation of the defendant's criminal history category as II.   JSIN data show that over the last five fiscal years, there were 637 defendants whose primary guideline was §2K2.1, with a Final Offense Level of 17 and a Criminal History Category of II, after excluding defendants who received a §5K1.1 substantial

assistance departure.   For the 586 defendants (92%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 24 months and the median length of imprisonment imposed was 27 months.  *See* https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last accessed July 5, 2023).

Accordingly, the government's recommendation of 27 months is consistent with the §3553(a) goal of avoiding unwarranted sentencing disparities.

## CONCLUSION

For the foregoing reasons, and those to be articulated at the sentencing hearing, the government respectfully recommends that this Court impose a low-end guideline sentence of 27 months imprisonment, to be followed by a term of supervised release of three years; and the mandatory special assessment of $200. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:   */s/ Elianna J. Nuzum*
      Elianna J. Nuzum
      Assistant United States Attorney
      John Joseph Moakley U.S. Courthouse
      One Courthouse Way, Suite 9200
      Boston, MA 02210
      elianna.nuzum@usdoj.gov
      617.748.3100

July 5, 2023

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Elianna J. Nuzum*
Elianna J. Nuzum
Assistant U.S. Attorney

July 5, 2023